IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN CHARLES BROWN,<br><br>　　　　　　Petitioner,<br><br>　vs.<br><br>ROY A. CASTRO,<br><br>　　　　　　Respondent. | Case No. CV F01-5140 JKS<br><br><br>O R D E R |

### INTRODUCTION

Ian Brown petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Docket Nos. 13 (Third am. pet.); 16 (Answer). Brown was convicted of first-degree murder and having personally used a weapon in the commission of the crime. *See* Docket No. 16, Ex. N at 2. He contends that habeas relief is warranted on two grounds. First, he argues that the trial court erred in refusing to allow the psychotherapist of a government witness to testify regarding that witness's credibility over the invocation of a state psychotherapist-patient privilege. Second, Brown argues that the trial court erred in failing to give certain jury instructions regarding corroboration of an accomplice's testimony and aider and abettor status.

### BACKGROUND

By information filed in November of 1995, Brown and his brother Jason Brown (Jason) were charged with the first-degree murder of Jerome Perry. It was further alleged that Brown had used a dangerous or deadly weapon, to wit: a glass flower pot, to commit the offense. The prosecutor made offers in both cases. Brown rejected the offer. Jason, however, elected to accept the offer that he plead guilty to first-degree robbery and assault with force likely to produce great bodily injury in exchange for his truthful testimony at the trial of his brother, Brown. Jason complied with the terms of his plea bargain and testified at Brown's jury trial.

1

Jason testified to the following: Jason had known Perry for six or seven months and he and Brown had been to Perry's house on several occasions prior to the murder. Reporter's Transcript (RT) at 107. Jason and Brown went to Perry's house on the evening of the murder and the three commenced drinking alcohol. RT at 108–12. Jason got sick and vomited and then passed out or fell asleep. RT at 112. When he regained consciousness he saw Brown punching Perry and choking him. RT at 112, 121. Perry tripped when trying to get away, at which point Jason kicked him. RT at 115–16. Thereafter Jason saw Brown strike Perry with a glass pot three times and heard more strikes. RT at 116–19. Jason asked Brown what he was doing, where after Brown dropped the pot and went to wash his hands. RT at 119. Jason took Perry's truck keys and also took some money that was in Perry's pocket and Jason and Brown left in Perry's truck.

## DISCUSSION

Brown's petition post-dates the April 24, 1996, enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which governs federal court procedure for habeas corpus petitions. AEDPA permits a federal court to grant relief in habeas petitions only if the state court's decision: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). "The first prong applies both to questions of law and to mixed questions of law and fact, while the second prong applies to decisions based on factual determinations." *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2004) (citations omitted). A state court's determination is "'contrary to' federal law if the state court (1) 'applies a rule that contradicts the governing law' set forth in Supreme Court case authority or (2) applies controlling law to a set of facts that are 'materially indistinguishable' from a Supreme Court decision but nevertheless reaches a different result." *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1169 (9th Cir. 2003) (citing and quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). A state court's decision is an "unreasonable application" of federal law if it is "objectively unreasonable," which "requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75.

ORDER

**I.     Psychotherapist-Patient Privilege**

Brown argues that the trial court violated his Sixth Amendment right of confrontation and his Fourteenth Amendment right to due process. Brown sought to call Dr. Schaeffer, a psychologist who had been retained by Jason's attorney to assist in the defense of Jason. RT at 301, 303. Apparently his aim in calling Dr. Schaeffer was to discredit Jason's testimony by revealing Jason's psychological status and history. Brown argued that any privilege[1] was waived when Jason's attorney provided Brown's attorney with Dr. Schaeffer's report. RT at 301. On the stand, Jason asserted the privilege and the trial judge found that the psychotherapist-patient privilege did apply. RT at 303. Based on assertion of the privilege, Brown's attorney did not call Dr. Schaeffer to testify. Brown's attorney further stated: "Part of my decision to not call Dr. Schaeffer is because of the large amount of testimony that I've already elicited from other witnesses regarding Jason Brown's psychological history and his condition prior to March of 1995." RT at 304.

The California Court of Appeal declined to rule on whether the trial court erred regarding the application of Jason's psychotherapist-patient privilege. Docket No. 16, Ex. N at 22. Instead, the court concluded that even if it decided those issues in his favor, Brown could not show that he was unduly prejudiced by the trial court's rulings on the privilege issue. *Id*. The court found that nothing in the record showed that: (1) Brown's ability to confront and cross-examine Jason or any other prosecution witness was hampered by the ruling; (2) while Dr. Schaeffer's direct testimony was not available, the court did permit Brown to use the content of the psychological report to cross examine

---

[1] California Evidence Code § 1014 reads:
> Subject to Section 912 and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between the patient and psychotherapist if the privilege is claimed by:
>    (a) The holder of the privilege.
>    (b) A person who is authorized to claim the privilege by the holder of the privilege.
>    (c) The person who was the psychotherapist at the time of the confidential communication . . . .

prosecution witnesses; and (3) defense counsel believed that calling Dr. Schaeffer would be cumulative in light of the testimony of other family members regarding Jason's psychological condition. *Id*.

Due process in a the context of a criminal trial means, "in essence, the right to a fair opportunity to defend against the [Government's] accusations." *Chambers v. Miss.*, 410 U.S. 284, 294 (1973). To this end, the Confrontation Clause of the Sixth Amendment secures the right of defendants to confront witnesses. "This right is secured for defendants in state as well as federal criminal proceedings . . . ." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). The "'primary interest secured by [the Confrontation Clause] is the right of cross-examination.'" *Id*. (quoting *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). However, "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Miss.*, 410 U.S. 284, 295 (1973). "Even relevant and reliable evidence can be excluded when the state interest is strong." *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983). In *Washington v. Texas* the Supreme Court held that the petitioner was "denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying . . . and whose testimony would have been relevant and material to the defense." 388 U.S. 14, 23 (1967). The Court noted, however, that "[n]othing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination or the lawyer-client or husband-wife privileges." *Id*. at n. 21.[2]

Here, Brown was given a fair opportunity to defend against the charges he faced. This fair opportunity included the right to confront and cross-examine to the appropriate extent in light of the legitimate interests protected by the psychotherapist-patient privilege. While the California Court of Appeal declined to rule on this issue, its conclusion that no prejudice resulted therefrom is supported by the record. Several of Brown's family members testified to Jason's psychological state based on

---

[2] In *Jaffee v. Redmond*, 415 U.S. 1 (1996), the Supreme Court held that in the civil suit arena "a privilege protecting confidential communications between a psychotherapist and her patient 'promotes sufficiently important interests to outweigh the need for probative evidence.'" *Id*. at 11–10 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)).

ORDER

behavior they personally observed. *See* Docket No. 16, Ex. N at 16–17. Jason himself testified that he sometimes experienced delusions and had experienced psychological problems since roughly age 14. *Id*. at 14. Furthermore, Brown's attorney acknowledged that Dr. Schaeffer's testimony would essentially be cumulative given the extensive testimony of other witnesses regarding Jason's psychological state. RT at 304. The trial court's decision to recognize the psychotherapist-patient privilege for communications between Jason and Dr. Schaeffer did not deprive Brown of due process or inappropriately hamper his opportunity to confront and cross-examine. In light of the law and the record, the California Court of Appeal's conclusion is not contrary to, or an unreasonable application of, clearly established federal law.

## II.  Accomplice Instructions

Brown argues that the trial court erred in failing to give instructions regarding the need for corroboration of accomplice testimony and for failing to instruct that Jason was an accomplice as a matter of law. While the trial court did not issue an accomplice as a matter of law instruction, it did instruct on the principles of felony murder, including felony murder aider and abettor. The court also instructed the jury on how to determine whether a witness was an aider and abettor and how to evaluate that witness's testimony accordingly. The California Court of Appeal concluded that,

> if the decision to take the victim's truck did not occur until after the fatal blow was struck, then the taking of the truck amounts to theft, not robbery, and cannot support a felony murder conviction. One version of Jason's testimony tended to show that there had been no discussion regarding the theft of the truck until after the fatal blow was struck. There was no evidence to show that Jason aided and abetted in [Brown's] premeditated murder of the victim (the other theory presented to the jury in support of a murder conviction). Hence, it was entirely proper for the trial court to leave the decision regarding Jason's aider and abettor status to the jury.

Docket No. 16, Ex. N at 30 (internal citations omitted).

Corroboration of accomplice testimony is not constitutionally mandated and failure to give cautionary accomplice instructions does not implicate the Constitution. *See United States v. Augenblick*, 393 U.S. 348, 352 (1969) ("When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions."); (*United States v. Lopez*, 803 F.2d 969, 973 (9th Cir. 1986) ("The uncorroborated testimony of an accomplice is enough to sustain a conviction unless the testimony is incredible or unsubstantial on its face."); *Takacs v. Engle*, 768 F.2d 122, 127 (6th Cir. 1985) ("If uncorroborated accomplice testimony is sufficient to

ORDER

support a conviction under the Constitution, there can be no constitutional right to instruct the jury that it must find corroboration for an accomplice's testimony."). Inasmuch as the trial court's failure to instruct that Jason was an accomplice as a matter of law implicates federal law, the issue is controlled by the deferential standards of AEDPA. The California Court of Appeal's conclusion that given the conflicting evidence it was not reversible error to leave the matter of Jason's aider and abettor status to the jury was not contrary to, or an unreasonable application of, clearly established federal law. *See* RT at 116–17; *see also United States v. Johnson*, 516 F.2d 209, 213 (8th Cir. 1975) ("Where the evidence is unclear on the question of the status of witnesses as accomplices, it is not reversible error to refuse to name such witnesses as accomplices."); *United States v. Callis*, 390 F.2d 606, 607–08 (6th Cir. 1968) ("While the court did not charge that the witnesses in question were accomplices because it was not clear to it that they were . . . there was no reversible error.").

**IT IS THEREFORE ORDERED:**

The petition for a writ of habeas corpus at **Docket No. 13** is **DENIED**. The Court is of the view that a certificate of appealability should be addressed now, rather than after Brown's claims and the issues they present fade with memory. The standard for granting a certificate of appealability has been stated as follows: "Where a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *United States v. Zuno-Arce*, 339 F.3d 886, 888–89 (9th Cir. 2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Brown has made no such showing and a certificate of appealability will therefore be **DENIED**. Brown may seek a certificate of appealability directly from the Ninth Circuit Court of Appeals motions panel.

Dated at Anchorage, Alaska, this  2  day of August 2005.

           /s/ James K. Singleton
**JAMES K. SINGLETON, JR.**
United States District Judge

ORDER